UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tammy R., <br><br> Plaintiff, <br><br> v. <br><br> Andrew Saul, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19-cv-1974 (SRN/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tammy R. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). The case is before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 12, 14], which were referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. The issues before the Court are relatively narrow: (1) whether the Administrative Law Judge ("ALJ") erred in his consideration of Plaintiff's past relevant work in the composite job of program director/certified nursing assistant ("CNA") and (2) whether the ALJ erred in concluding that Plaintiff had past relevant work in the standalone job of program director. For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's decision and recommends that Plaintiff's motion be denied and the Commissioner's motion be granted.

**I.     Background**

    **A.     Initial Administrative Proceedings**

Plaintiff filed her application for DIB on November 24, 2015, alleging an onset of disability date of June 1, 2015. (R. 265–66.)[1] That date was later amended to June 9, 2015. (R. 52.) Plaintiff's allegedly disabling conditions were fibromyalgia, sciatic nerve pain, a cyst on her lower back, memory problems, arthritis, degenerative bone disease, and depression, and a history of neck surgery in 2010, a hip replacement in 2012, and carpal tunnel surgery in 2012. (R. 144–45.) The application was denied on initial review and reconsideration. (R. 152, 168.) Plaintiff then requested a hearing before an administrative law judge ("ALJ").

    **B.     Hearing Testimony**

At the August 16, 2018 hearing, Plaintiff testified she worked as a CNA, a house manager, and a program director in a group home called the Eveleth Residence. (R. 53–54, 57.) As a CNA, she provided direct care to clients such as helping them with hygiene, meals, outings, finances, and shopping. (R. 54.) She lifted as much as 100 pounds or more when she assisted a person out of a bed or with toileting. (R. 56.) Plaintiff worked as a CNA for about two years, from 2005 to 2006, and then took a job as a house manager for the same organization in 2006. (R. 57.)

As house manager, Plaintiff oversaw employee scheduling, coordinated all activities such as meals and outings, shopped for the house and its residents, coordinated

---

[1] The Social Security Administrative Record ("R.") is available at ECF No. 9.

2

transportation for the clients, and scheduled medical appointments.  (R. 58.)  Her duties overlapped with the duties of a CNA, particularly when she was training new employees or an employee called in sick.  (R. 59.)  Plaintiff spent about 50% of her workday as a house manager performing CNA-type duties.  (R. 60.)

A few months after she began working as a house manager, Plaintiff took on the duties of a program director without a formal change in title, at least at first.  (R. 64.)  She estimated she worked in that position from late 2006 to 2011.[2]  (R. 65.)  In addition to filling in for CNA staff when they were absent from work, Plaintiff was responsible for client programming, communicating with their case managers, attending meetings with families and governmental entities, and hiring and firing employees.  (R. 65.)  She sometimes performed CNA-type duties such as cooking, cleaning, and moving clients from beds and wheelchairs.  (R. 66, 70.)  In this composite position, Plaintiff spent about 70% of her workday performing program director-type duties and the other 30% of her workday performing CNA-type duties.  (R. 61.)  Even though her duties increased, her earnings somewhat decreased because she was not able to work as much.  (R. 67.)  At the end of her employment at the Eveleth Residence, she worked only half-days.  (R. 103.)  Eventually she resigned because her medications and medical conditions affected her ability to perform required job duties.  (R. 69–74.)

Plaintiff testified she performed similar work at another company, Welty Homes,

---

[2] Plaintiff's tax records show that she worked for the Eveleth Residence from 2006 until 2013.  (R. 273–74.)

3

as a manager of seven group homes from 2012 to 2014.[3]  (R. 75–76.)  She visited each of the seven group homes at least once a week.  (R. 76.)  She managed emergency and urgent situations, disciplined and fired employees, and supervised the seven house managers, as well as performed more mundane tasks such as filling in for employees and providing direct CNA-type care to clients when needed.  (R. 77–78.)

The ALJ asked Plaintiff about a discrepancy between her testimony and the written job description she provided on a Work History Report.[4]  In response, Plaintiff's attorney pointed out that her testimony was under oath whereas the written statement was not.  (R. 80–83.)  The ALJ also questioned Plaintiff about a discrepancy between her claimed limitation that she could not lift more than ten pounds and her testimony that she helped with direct client care, which required lifting 100 pounds or more.  (R. 85.)

Vocational expert Cheryl Zilka also testified at the administrative hearing.  Ms.

---

[3] Plaintiff's tax records show that she worked at Welty Homes in 2014 and 2015.

[4] Plaintiff completed the Work History Report on February 22, 2016.  (R. 296–303.)  She listed three jobs: (1) CNA, from 2005 to 2006; (2) CNA/Director, from 2006 to 2011; and (3) General Manager, from 2012 to 2014.  (R. 296.)  She worked in the first job, as a CNA, four to ten hours a day, twenty to forty hours a week, and made $15 per hour.  (R. 297.)  She cared for elderly and ill patients, cleaned, provided transportation, administered medications, provided meals, planned activities, and completed reports.  (R. 297.)  She supervised one other person but did not hire or fire employees.  (R. 297.)  In Plaintiff's second job, as a CNA/Director, she worked eight to twelve hours a day, forty to sixty hours a week, and made $17 per hour.  (R. 298.)  She supervised staff and clients, prepared daily documentation and reports, attended meetings, cleaned, trained, administered medications, and planned activities.  (R. 298.)  She supervised fifteen to twenty people and hired and fired employees.  (R. 298.)  In Plaintiff's third job, as a General Manager, she made $20 per hour.  (R. 299.)  She supervised and assisted the house managers, attended meetings, prepared reports and billing records, prepared house budgets, and oversaw payroll.  (R. 299.)  She supervised forty people and hired and fired employees.  (R. 299.)

Zilka agreed with the ALJ that when Plaintiff transitioned from a CNA to program director at the Eveleth Residence, her job became "composite," meaning it involved job duties from both jobs. (R. 95.) When Plaintiff worked at Welty Homes as a program director, however, that job was non-composite because there was no constant expectation that she had to do CNA-type duties. (R. 95–96.) Based on these findings and other relevant findings that are not in dispute, the ALJ asked Ms. Zilka to assume a hypothetical individual of Plaintiff's age and education; with past relevant work (1) in a composite job of CNA and program director and (2) in a standalone job of program director; and limited to light work, with additional limitations on climbing, kneeling, crawling, balancing, stooping, crouching, reaching, handling, and fingering. (R. 104.) Ms. Zilka testified that the hypothetical individual could not perform the composite job because that job would be at least a medium exertional level. (R. 104.) Ms. Zilka testified the person would be able to do the standalone program director job, however. (R. 105.)

The ALJ then posed a second hypothetical question, limiting the person to sedentary work instead of light work and to simple, routine tasks. (R. 105.) Ms. Zilka responded that the person would not be able to do any of Plaintiff's past work. (R. 105.)

Because Plaintiff moved from the "closely approaching advanced age" category into the "advanced age" category when she turned 55 years old during the relevant time period, the ALJ asked Ms. Zilka some questions about sedentary jobs and transferability

of skills.[5]  (R. 106–08.)  Ms. Zilka testified that if Plaintiff were limited to a sedentary residual functional capacity ("RFC"),[6] certain skills from the program director job would transfer to a job as a resident supervisor, with little to no vocational adjustment in tools, work process, work environment, or the industry.  (R. 106.)  When Plaintiff's counsel asked Ms. Zilka what she meant by tools, Ms. Zilka was not able to answer the question.  (R. 109–10.)  The ALJ pointed out, however, that the resident supervisor job did not require any specific use of tools.  (R. 111.)  As for work processes, Ms. Zilka testified there would be no problems with adjustment.  (R. 112.)

### C. The ALJ's Decision

The ALJ issued an adverse decision on October 3, 2018, concluding that Plaintiff was not disabled between June 9, 2015, and the date of the decision.  (R. 7–25.)  In arriving at this decision, the ALJ utilized the five-step sequential analysis described in 20 C.F.R. § 404.1520(a)(4).[7]  At step one, the ALJ determined that Plaintiff had not engaged

---

[5] A person "closely approaching advanced age" who has a severe impairment and limited work experience may be seriously affected in her ability to adjust to other work.  20 C.F.R. § 404.1563(d).  A person "of advanced age" is considered significantly affected in her ability to adjust to other work, by her age alone.  20 C.F.R. § 404.1563(e).  If a person is of advanced age (older than 55) and has a severe impairment that limits her "to sedentary or light work," the Social Security Administration must find that she cannot adjust to other work unless she has transferable skills.  20 C.F.R. § 404.1568(d)(4).

[6] An individual's RFC measures the most that person can do, despite her limitations, in a work setting.  20 C.F.R. § 404.1545(a)(1).

[7] The five steps are (1) whether the claimant's work activity was substantial gainful activity, (2) the medical severity of the claimant's impairments, (3) whether one or more impairments meet or medically equal the criteria of a listed impairment, (4) the claimant's RFC and past relevant work, and (5) the claimant's RFC and whether she can make an adjustment to other work.  20 C.F.R. § 404.1520(a)(4).

in substantial gainful activity since June 9, 2015.  (R. 12.)  At step two, the ALJ found that Plaintiff had the following severe impairments: inflammatory arthritis, fibromyalgia, obesity, hip degenerative joint disease, bilateral carpal tunnel syndrome, lumbar and cervical degenerative disc disease, and left knee degenerative joint disease.  (R. 12.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 16.)

Between steps three and four, an ALJ must determine the claimant's RFC.  20 C.F.R. § 404.1520(e).  The ALJ in this case found that Plaintiff could perform a range of work at the light exertional level, subject to limitations on climbing, kneeling, crawling, balancing, stooping, crouching, reaching, handling, and fingering.  (R. 18.)

At step four, the ALJ considered whether Plaintiff had the RFC to perform her past relevant work.[8]  (R. 12.)  He determined that Plaintiff could perform her previous job as a program director, as that job is generally performed according to the Dictionary of Occupational Titles ("DOT") definition.  (R. 23, 24–25.)  In making this determination, the ALJ found that Plaintiff had past relevant work experience as a program director, as that job is defined by DOT 187.117-046.  (R. 24.)  The ALJ relied on Ms. Zilka's opinion to find that Plaintiff "has past relevant work experience as a program director, light level of exertion, skilled skill level, specific vocational preparation ("SVP") level of eight, as

---

[8] The term "past relevant work" means "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1).

7

generally performed, according to the DOT." (R. 24.) The ALJ stated this finding was consistent not only with Ms. Zilka's opinion but also with the written Work History Report completed by Plaintiff, in which Plaintiff reported working as a program director for two years, making $20 an hour, and performing duties such as supervising and assisting house managers, attending meetings, preparing reports, preparing bills and budgets, supervising employees, hiring and firing employees, and overseeing payroll. (R. 24.) The heaviest weight required for lifting was about ten pounds. (R. 24.)

The ALJ also found that Plaintiff had past relevant work in the composite job of program director and CNA, the latter of which is defined by DOT 355.674-014 as medium exertional level, semiskilled, and SVP level of four. (R. 24.) The ALJ described this finding also as consistent with Ms. Zilka's opinion and the written Work History Report completed by Plaintiff, in which Plaintiff reported working in the composite job for several years, making $17 an hour, and performing duties such as supervising staff and clients, preparing daily reports, attending meetings, cleaning, training, administering medications, hiring and firing employees, and creating programming. (R. 24.)

In determining that Plaintiff could perform her past job as a program director, the ALJ found the work Plaintiff had performed in that position was substantial gainful activity and that Plaintiff had performed that job long enough to learn how to do it, both as a standalone job in 2014 and 2015 and as a composite job from 2007 to 2012. (R. 25.) The ALJ's determination that Plaintiff could perform her past relevant work compelled a finding that she was not disabled. (R. 25.)

### D.  Subsequent Proceedings

Plaintiff sought review of the ALJ's decision by the Appeals Council, which denied the request.  (R. 1.)  The ALJ's decision then became the final decision of the Commissioner.

Plaintiff commenced this action for judicial review on July 26, 2019.  Consistent with District of Minnesota Local Rule 7.2, she filed a motion for summary judgment on December 10, 2019.  Plaintiff accepts the ALJ's findings related to her physical limitations and the assessed RFC.  (Pl.'s Mem. Supp. Mot. Summ. J. at 4 [Doc. No. 13].)  Her appeal is limited to the ALJ's findings concerning her previous jobs and step four conclusion that she could perform past relevant work.

## II.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision.  42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  The threshold for substantial evidence "is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Krogmeier*, 294 F.3d at 1022 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the

9

Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB purposes, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

**III.  Discussion**

    **A.  Whether the ALJ Erred in Comparing Plaintiff's RFC to the Composite Job**

Plaintiff argues the ALJ erred in comparing her RFC to the composite job of program director/CNA because he failed to assess whether she could fulfill all the duties of her prior work as it was actually performed rather than as it is generally performed. (Pl.'s Mem. at 9–10.) Plaintiff worked in the composite job of program director/CNA at the Eveleth Residence from 2006 to 2012 and in the standalone job of program director at Welty Homes from 2014 to 2015.

A composite job is "[w]ork that required significant elements of two or more occupations and that has no counterpart in the DOT." Program Operations Manual System ("POMS") DI 25001.001(A)(10). When comparing a claimant's RFC to a

10

composite job, the ALJ must consider the job "as the claimant performed it" and may not evaluate it "as generally performed in the national economy." POMS DI 25005.020(B). The ALJ may "find the claimant capable of performing the composite job only if he or she can perform all parts of the job" as the claimant performed it. *Id.*; *see also* Social Security Ruling 82-61 ("[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case.").

Here, consistent with the vocational expert's testimony, the ALJ concluded that Plaintiff's job of program director/CNA was a composite job. (R. 24.) The ALJ summarily compared Plaintiff's RFC "with the physical and mental demands" of both the composite program director/CNA job and the standalone program director job and found her "able to perform the job of program director as generally performed, according to the DOT." (R. 24–25.) The ALJ did not, however, consider whether Plaintiff could perform the composite program director/CNA job as she performed it. Nor did the ALJ conclude that Plaintiff could perform the composite job. And, indeed, the vocational expert testified that a hypothetical individual with Plaintiff's traits and characteristics could not perform the composite job because that job would be at least a medium exertional level. (R. 104.) As a result, the ALJ's conclusion that Plaintiff could perform her past relevant work in the composite job of program director/CNA is not supported by substantial evidence.

### B.   Whether the Standalone Program Director Job Qualified as Past Relevant Work

The Commissioner suggests that the above error is harmless because Plaintiff can perform her past relevant work as a standalone program director.  Plaintiff disagrees, arguing that she did not work long enough as a program director for that job to qualify as past relevant work and that the job was not substantial gainful activity in 2014 and 2015.

#### 1.   Whether the Program Director Job Lasted Long Enough for Plaintiff to Learn to Do It

"Past relevant work" means "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).  Each job in the DOT "is assigned a number that reflects the job's specific vocational preparation time (SVP), i.e., how long it generally takes to learn the job."  *Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998).  The "Program Director, Group Work" job has an SVP level of eight, which means it generally takes more than four years and up to ten years to learn the job.  DOT 187.117-046, U.S. Dep't of Labor (4th ed. rev. 1991), 1991 WL 671354.  Plaintiff has the burden to prove she cannot perform her past relevant work.  *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019).

Plaintiff worked exclusively as a program director at Welty Homes in 2014 and 2015.  The duration of that job, alone, does not meet the four-year SVP threshold for past relevant work.  But the Commissioner urges the Court to apply the time Plaintiff worked in the composite program director/CNA job at Eveleth Residence to meet the SVP requirement.  This argument is made to buttress the ALJ's finding that Plaintiff performed

> SVP eight level work for long enough to have learned to do it, as a combination job, from 2007 through 2012, and as a standalone job in 2014 and 2015. SVP level 8 jobs require at least four years to learn how to do. The claimant worked as a program director in 2014 and 2015 years [in] a standalone job, and worked as a program director from 2007 through 2012 as part of a combination job. Therefore, she did the job for at least four years, long enough to have learned how to do it.

(R. 25.)

The question is whether an ALJ may apply some of the years worked in a composite job to the SVP requirement. The Court concludes that an ALJ may do so and that the ALJ's decision to do so here was supported by substantial evidence.

Although the ALJ did not explain in detail how he reached the four-hour SVP threshold, the calculation is simple. Two of the years were attained working at Welty Homes in 2014 and 2015. As for the remainder, Plaintiff, the ALJ, and Ms. Zilka all agree that the program director job at Eveleth Residence was a composite job that combined the duties of a program director with the duties of a CNA. Plaintiff testified she performed program director-type duties about 70% of the time. Seventy percent of 6 years is 4.2 years. Adding these 4.2 years to the 2 years at Welty Homes results in 6.2 years, which exceeds the SVP level for the "Program Director, Group Work" job.

Even without the calculation, however, substantial evidence supports the ALJ's conclusion that Plaintiff worked as a program director long enough to learn the job. The best evidence is that Plaintiff actually worked exclusively in a standalone program director job in 2014 and 2015, after having worked as a program director 70% of the time for six years. The amount of time needed for SVP is only a guideline for the amount of time that is generally required for someone to learn the techniques, acquire the

information, and develop the abilities to perform the job to an average degree. POMS DI 25005.015(D). Considering that Plaintiff performed the duties of a program director 70% of the workday from 2007 through 2012 and the entire workday from 2014 to 2015, substantial evidence supports the ALJ's conclusion that Plaintiff had learned the techniques, acquired the necessary information, and developed the abilities to perform that job.

Plaintiff's suggestion that the years worked in a composite job cannot count toward the SVP threshold is not supported by the language of POMS DI 25005.015, Plaintiff's cited case authority, or logic. As stated previously, POMS DI 25005.015(D) instructs that the amount of time for SVP is only a guideline and gives the adjudicator discretion to account for the nature and complexity of the work, the employment history provided by the claimant, and whether "the claimant performed work that had a continuity of skills, knowledge, and work process with another job." POMS DI 25005.015 does not rule out or otherwise address composite work. Here, the related nature of the program director and CNA jobs and the similarity of skills, knowledge, and work processes required to do those jobs support counting the time Plaintiff spent doing program director-type work as time spent learning the techniques, acquiring the information, and developing the abilities needed to perform the program director job.

Furthermore, Plaintiff's cited cases address either SVP, *see Fines*, 149 F.3d at 895; *Thomas v. Apfel*, 22 F. Supp. 2d 996, 998 (S.D. Iowa 1998),[9] or how an ALJ must

---

[9] Plaintiff cites *Fines* for the general precept that a job's SVP reflects how long it generally takes to learn the job and *Thomas* for the general proposition that a case must

14

compare a claimant's RFC to a composite job as the claimant performed it, *see West v. Berryhill*, No. 4:16-cv-852-SPM, 2017 WL 4264126, at *6 (E.D. Mo. Sept. 26, 2017); *Blackwell v. Colvin*, No. 4:14-cv-252 JMB, 2015 WL 4132000, at *17 (E.D. Mo. July 8, 2015); *Peterson v. Astrue*, No. 1:09-cv-00209, 2010 WL 3219293, at *7 (N.D. Ind. Aug. 12, 2010).[10] None of Plaintiff's cases, however, address the interaction between the two in the context of SVP, that is, whether an ALJ may count the time a claimant spent working in one of the jobs of a composite position toward as time spent learning the job for the purpose of SVP.

Finally, it stands to reason that the time spent working in a job that comprised not just part—but most—of a composite position is relevant to whether a claimant worked in the job long enough to learn it, especially where, as here, the claimant has identified the percentage of time devoted to the job, and the job duties are well-defined. The converse is equally true: it would not be reasonable to omit all time spent working in a composite job simply because the claimant's job duties fell under two DOT job definitions. Using this case as an example, where a claimant worked as a program director 70% of the time and a CNA 30% of the time in a composite position for six years, it would be reasonable to conclude that the claimant was learning the skills, acquiring the knowledge, and developing the abilities needed for average performance of the program director job 70%

---

be remanded if an ALJ determines a job was not past relevant work because the claimant did not work long enough. (Pl.'s Mem. at 8, 9.)

[10] Plaintiff cites *West*, *Blackwell*, and *Peterson* for the rule discussed in Part III.A *supra*: that an ALJ must consider how a claimant actually performed a composite job in assessing whether that job was past relevant work. (Pl.'s Mem. at 11.)

15

of the time.

Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff worked long enough as a program director for that job to qualify as past relevant work. Substantial evidence supports a finding that Plaintiff "learned the techniques, acquired information, and developed the facility needed for average performance" of the program director job. *See* POMS DI 25005.015(D).

### 2. Whether the Program Director Job Was Substantial Gainful Activity

Plaintiff next argues that her work for Welty Homes in 2014 and 2015 could not have been past relevant work because it was not substantial gainful activity. In 2014, Plaintiff earned $11,225, and in 2015, Plaintiff earned $14,680. (R. 273.) The ALJ determined, without discussion, that Plaintiff's earnings for these years qualified as substantial gainful activity. The Commissioner did not respond to this argument in his memorandum.

POMS DI 25001.001(A)(82) contains a monthly chart to aid an ALJ in determining whether past work qualifies as substantial gainful activity. The threshold for twelve months of work in 2014 is $12,840. POMS DI 25001.001(A)(82). Plaintiff's earnings of $11,225 do not meet this threshold. Thus, her work as a program director in 2014 is not substantial gainful activity and cannot be considered past relevant work. Plaintiff's earnings of $14,680 in 2015, however, exceed the $13,080 threshold for that year. Thus, her work as a program director that year was substantial gainful activity and was properly deemed past relevant work.

16

There is no question that Plaintiff's earnings in the years 2007 through 2012 were substantial gainful activity. Her yearly earnings ranged from $25,123.45 in 2011 to $31,747.43 in 2008. (R. 273.) Plaintiff has not argued that these earnings do not qualify as substantial gainful activity.

### 3. Whether a Finding that Plaintiff Could Perform Her Past Relevant Work as a Program Director Is Irreconcilable with a Finding that Plaintiff Could Not Perform Her Past Relevant Work in the Composite Job of Program Director/CNA

Plaintiff argues it is error to find she can perform the duties of one of two jobs that comprise a composite job. That is true, in the context of the composite job analysis. *See Peterson*, 2010 WL 3219293, at *7. "An administrative law judge may not deem a claimant capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs." *Gallant v. Astrue*, No. 09-cv-357-P-S, 2010 WL 2927263, at *5 (D. Me. July 20, 2010), *R. & R. adopted*, 2010 WL 3168270 (Aug. 10, 2010). But that is not what the ALJ did here. Rather, the ALJ determined that Plaintiff had two jobs that qualified independently as past relevant work—the standalone program director job and the composite program director/CNA job—and considered them separately. Plaintiff had experience working in the standalone program director job separate and apart from the composite job. Thus, the ALJ did not err in considering that job separately. The fact that the program director job was also part of the composite job did not, and should not, automatically disqualify it from being considered as past relevant work as a standalone job. As long as the ALJ considered and discussed the standalone

17

job separately from the composite job in finding that the standalone job qualified as past relevant work, which the ALJ did here, there is no error. This distinguishes this case from Plaintiff's cited authority, where the *only* past relevant work was a composite job. *See West*, 2017 WL 4264126, at *5; *Blackwell*, 2015 WL 4132000, at *17; *Peterson*, 2010 WL 3219293, at *7.

**IV.    Recommendation**

The ALJ's decision that Plaintiff could perform her past relevant work in the composite position of program director/CNA is not supported by substantial evidence. That error is harmless, however, because substantial evidence does support the ALJ's decision that Plaintiff could perform her past relevant work in the standalone position of program director.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment [Doc. No. 12] be **DENIED**;

2. Defendant's Motion for Summary Judgment [Doc. No. 14] be **GRANTED**; and

3. Judgment be entered accordingly.

Dated:  June 26, 2020

                                         s/ *Hildy Bowbeer*
                                         HILDY BOWBEER
                                         United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).